**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WENDY RATH, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>JO-ANN STORES, LLC<br><br>                Defendant. | Civil Action No. 1:21-cv-00791-WMS |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.  THE FIRST DEPARTMENT'S RULING IN *VEGA* CONTROLS THIS
    ACTION ................................................................................................................. 1

    A.  15 Out Of 15 Courts To Consider *Vega* Have Held That An
        Employee Has A Private Right Of Action For Late Wage
        Payments; Zero Have Disagreed ................................................................. 2

    B.  Courts Have Held That A Private Right Of Action Exists Long
        Before *Vega* .............................................................................................. 5

II. THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR
    VIOLATIONS OF NYLL § 191 ............................................................................ 7

    A.  Legislative Memoranda From 1966 And 1967 Show An Intent To
        Create A Private Right Of Action With Liquidated Damages From
        Late Payment Of Wages ............................................................................. 8

    B.  The New York Department Of Labor Has Explicitly Held That A
        Private Right Of Action Exists ................................................................... 10

III. THE LATE PAYMENT OF WAGES GIVES RISE TO A PRIVATE
     RIGHT OF ACTION UNDER THE FLSA, AND THAT APPLIES WITH
     EQUAL FORCE TO THE NYLL ...................................................................... 11

    A.  The First Department Properly Relied On FLSA Case Law In *Vega* .................. 11

    B.  The FLSA and NYLL Have Identical Purposes and Similar
        Provisions, and Courts Apply FLSA Principles When Analyzing
        Liability Under the NYLL ........................................................................... 12

    C.  The Failure to Timely Pay Wages is a Violation of the FLSA for
        Which There is a Private Right of Action, Even in the Absence of
        an Express Statutory Provision ................................................................... 13

    D.  Wages Become "Unpaid" If Not Paid When They are Due ................................ 13

    E.  The Reasoning Applied to Late Payment of Wages Under the
        FLSA is Applicable to the NYLL ............................................................... 15

IV. NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF
    ACTION ................................................................................................................ 17

V.  DEFENDANT'S DELAYED PAYMENT TO PLAINTIFF OF
    AMOUNTS OWED DOES NOT EXEMPT IT FROM LIQUIDATED
    DAMAGES ........................................................................................................... 19

VI. THE COURT IS NOT EMPOWERED TO GRANT DEFENDANT'S
    MOTION BASED ON A MERE DISAGREEMENT WITH *VEGA* ............................ 22

i

CONCLUSION ........................................................................................................................... 23

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Beh v. Cmty. Care Companions Inc.*,
  2021 WL 3914297 (W.D.N.Y. Feb. 1, 2021) ........................................................... 4

*Belizaire v. Rav Investigative & Sec. Servs.*,
  61 F. Supp. 3d 336 (S.D.N.Y. 2014) ...................................................................... 7

*Biggs v. Wilson*,
  1 F.3d 1537 (9th Cir. 1993) ........................................................................... 14, 15

*Brooklyn Savings Bank v O'Neil*,
  324 US 697 (1945) .............................................................................. passim

*Brooks v. Village of Ridgefield Park*,
  185 F.3d 130 (3d Cir. 1999) ............................................................................ 14

*Brooks v. Village of Ridgefield Park*,
  978 F. Supp. 613 (D.N.J. 1997) ........................................................................ 14

*Caul v. Petco Animal Supplies, Inc.*,
  2021 WL 4407856 (E.D.N.Y. Sep. 27, 2021) ................................................ passim

*Caul v. Petco Animal Supplies, Inc.*,
  2021 WL 6805889 (E.D.N.Y. Dec. 21, 2021) ................................................ 22, 23

*Cuzco v. Orion Builders, Inc.*,
  2010 WL 2143662 (S.D.N.Y. May 26, 2010) ........................................................ 5

*Duverny v. Hercules Medical P.C.*,
  2020 WL 1033048 (S.D.N.Y. Mar. 3, 2020) ......................................................... 3

*Elhassa v. Hallmark Aviation Servs., L.P.*,
  2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) .................................................... 4, 18

*Gaughan v. Rubenstein*,
  261 F. Supp. 3d 390 (S.D.N.Y. 2017) .................................................................. 6

*Gillett v. Zara USA, Inc.*,
  2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022) ....................................................... 2

*Glatt v. Fox Searchlight Pictures Inc.*,
  293 F.R.D. 516 (S.D.N.Y. 2013) ....................................................................... 12

*Gonzales v. Tan Israel Pre-Sch.*,
  2014 WL 1011070 (E.D.N.Y. Mar. 14, 2014)............................................................ 7, 15

*Gonzalez v. Jane Roe Inc.*,
  2015 WL 4662490 (E.D.N.Y. July 15, 2015)........................................................... 13, 16

*Hamelin v. St. Luke's Healthcare*,
  274 F.R.D. 385 (N.D.N.Y. 2011) .................................................................................... 12

*Herrera v. Tri-State Kitchen & Bath, Inc.*,
  2015 WL 1529653 (E.D.N.Y. Mar. 12, 2015)................................................................ 12

*Jones v. Nike Retail Svcs.*,
  2022 WL 4007056 (E.D.N.Y. Aug. 30, 2022) ................................................................. 4

*Lopez-Serrano v. Rockmore*,
  132 F. Supp. 3d 390 (E.D.N.Y. 2015) .......................................................................... 6, 7

*Mabe v. Wal-Mart Assocs., Inc.*,
  2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) ....................................................... 3, 17, 18

*Martin v. United States*,
  117 Fed. Cl. 611 (2014)............................................................................................. 13, 15

*Mendez v. U.S. Nonwovens Corp.*,
  2 F. Supp. 3d 442 (E.D.N.Y. 2014) .............................................................................. 13

*Moran Towing & Transp. Co. v. N.Y. State Tax Com.*,
  72 N.Y.2d 166 (1988)..................................................................................................... 11

*Muhammed Chowdhury v. Hamza Express Food Corp.*,
  666 F. App'x 59 (2d Cir. 2016) ......................................................................... 13, 16, 20

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ............................................................................................ 7

*Pachter v. Bernard Hodes Grp., Inc.*,
  10 N.Y.3d 609 (2008)....................................................................................................... 6

*Pashaian v. Eccelston Properties, Ltd.*,
  1993 WL 322835 (S.D.N.Y. Aug. 16, 1993)................................................................... 7

*People v. Bloom*,
  7 Misc. 2d 1077 (1957).................................................................................................. 15

*People v. Vetri*,
   309 N.Y. 401 (1955) ................................................................................ 21

*Phillips v. Max Finkelstein, Inc.*,
   73 Misc. 3d 1 (N.Y. App. Term. 2021) .................................................... 4

*Poplawski v. Metroplex on the Atl., L.L.C.*,
   2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) ............................................ 7

*Rana v Islam*,
   887 F3d 118 (2d Cir. 2018) ........................................................ 12, 17, 20

*Rodrigue v. Lowe's Home Centers, LLC*,
   2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021) .......................................... 2

*Rojas v. Hi-tech Metals, Inc.*,
   2019 WL 4570161 (Queens Cnty. Sept. 11, 2019) ............................... 3, 5

*Santillan v. Henao*,
   822 F. Supp. 2d 284 (E.D.N.Y. 2011) .................................................... 12

*Scott v. Whole Foods Market Group, Inc.*,
   2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) ............................... 3, 5, 6, 18

*Scott v. Whole Foods Market Group, Inc.*,
   2020 WL 9814095 (E.D.N.Y. Feb. 5, 2020) .............................................. 5

*Sorto v. Diversified Maintenance Systems, LLC*,
   2020 WL 8413553 (E.D.N.Y. Nov. 15 2020) .......................................... 18

*Sorto v. Diversified Maintenance Systems, LLC*,
   2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) ............................................ 4

*Urtubia v. B.A. Victory Corp.*,
   857 F. Supp. 2d 476 (S.D.N.Y. 2012) ...................................................... 6

*V.S. v. Muhammad*,
   595 F.3d 426 (2d Cir. 2010) ......................................................... 1, 2, 22

*Vega v. CM & Assoc. Const. Mgmt., LLC*,
   175 A.D.3d 1144 (N.Y. App. Div. 1st Dep't 2019) ......................... passim

*Wiggins v. Hain Pure Protein Corp.*,
   829 F. Supp. 2d 231 (S.D.N.Y. 2011) ...................................................... 5

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*,
   2016 WL 4704917 (S.D.N.Y. Sept. 8, 2016) .................................... 16, 20

**STATUTES**

29 U.S.C. § 201 ..................................................................................................... 11

29 U.S.C. § 202 ..................................................................................................... 12

29 U.S.C. § 216 ..................................................................................................... 12

29 U.S.C. § 216(b) ...................................................................................... 12, 19, 21

New York Labor Law ("NYLL") § 191 .......................................................... passim

New York Labor Law ("NYLL") § 198 .......................................................... passim

**REGULATIONS**

29 C.F.R. § 778.106 ............................................................................................. 13

## <u>INTRODUCTION</u>

Defendant's motion to dismiss ("MTD") centers around one primary argument:  that there is no private right of action for violation of the frequency-of-payment rules set forth under the New York Labor Law ("NYLL") § 191.  Defendant has a tall mountain to climb because all of its arguments are belied by *Vega v. CM & Assoc. Const. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. App. Div. 1st Dep't 2019), where New York's appellate division for the First Department issued a unanimous decision holding that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191."  *Vega* is the State's highest court to address this issue to date.  Since the issuance of the *Vega* decision, all 15 courts to consider it (including 13 federal courts in this Circuit) have followed its holding.  Zero have declined to do so.

Defendant must do far more than convince the Court that Defendant is correct in order to win this motion.  The Second Circuit has explained that federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion."  *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010).  Defendant comes nowhere close to clearing this significant hurdle.

The numbers do not lie.  There is a reason why the arguments Defendant is making were already rejected by every other court to consider them.  It is because they are wrong.

## <u>ARGUMENT</u>

### I.   THE FIRST DEPARTMENT'S RULING IN *VEGA* CONTROLS THIS ACTION

The First Department has explained that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191."  *Vega*, 175 A.D.3d at 1146.  And "even if Labor Law § 198 does not expressly authorize a private action for violation of the requirements of Labor Law § 191, a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the

legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* Thus, in *Vega*, the First Department found two alternative bases for its decision that a private right of action exists for NYLL § 191 claims.

Here, Defendant contends "*Vega* is not entitled to any deference" and that the Court should ignore *Vega.*" MTD at 12. Defendant is wrong. The *Vega* decision constitutes guidance from the highest state court to address this issue to date. Accordingly, because there is no case law from the Court of Appeals on this issue, this Court is bound by the holding of the New York's First Department in *Vega* unless there is "persuasive evidence" that the Court of Appeals would hold otherwise. *See V.S. v. Muhammad*, 595 F.3d at 432. But no such "persuasive evidence" exists. The *Vega* decision was unanimously issued by all five judges sitting on the First Department's panel without any dissent. *See Gillett v. Zara USA, Inc.*, 2022 WL 3285275, at *11 (S.D.N.Y. Aug. 10, 2022) ("Because Defendants offer no 'persuasive evidence that the state's highest court would reach a different conclusion' than the First Department did in *Vega*, the Court is 'bound to apply the law as interpreted by' the intermediate appellate court.") (internal citations omitted).

### A.   15 Out Of 15 Courts To Consider *Vega* Have Held That An Employee Has A Private Right Of Action For Late Wage Payments; Zero Have Disagreed

Since *Vega*, at least 15 courts have adopted its holding, and zero courts to consider *Vega* have disagreed. Defendant offers no basis why this Court should be the first.

"Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law … and defendants present no persuasive reason to do otherwise." *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021); *see also Gillett*, 2022 WL 3285275, at *12 ("Thus, applying *Vega*, the Court finds that the NYLL affords a private right of action to enforce the late payment of wages."); *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *2 (E.D.N.Y. Sep. 27, 2021) ("Section 191 permits

2

a manual worker to bring a civil action for delayed payment of wages—even if the wages have subsequently been paid."); *Quintanilla v. Kabco Pharm., Inc., et al.*, Case No. 2:19-cv-06752-PKC, ECF No. 18 (E.D.N.Y.) (June 30, 2020 Minute Entry) (rejecting argument that plaintiff did not have private right of action to pursue Section 191 claim "in light of the *Vega* decision"); *Corporan v. Regeneron Pharmaceuticals, Inc.*, Case No. 21-cv-05069-CS (S.D.N.Y. Jan. 24, 2022), Kopel Decl., Ex. 1 at pp. 14-15 ("Since *Vega* was decided in 2019, every court in this Circuit to consider the decision appears to have followed it. … Defendant presents no compelling reasons for me to buck this trend… I find that decision, and the logic of other courts within this Circuit applying it, to be well-reasoned and persuasive."); *Davis v. Banana Republic, LLC*, Case No. 21-cv-06160-KAM (E.D.N.Y. Apr. 5, 2022), Kopel Decl., Ex. 2 at pp. 4 (agreeing with *Vega* and rejecting argument that plaintiff lacks private right of action); *Rojas v. Hi-tech Metals, Inc.*, 2019 WL 4570161, at *4 (Queens Cnty. Sept. 11, 2019) ("In light of the sentiments set forth in *Gottlieb* by the Court of Appeals and the holding in *Vega*[,] Defendant's motion to dismiss Plaintiff's NYLL §§ 191(1)(a) and 198 (1-a) claims is denied."); *Scott v. Whole Foods Market Group, Inc.*, 2019 WL 1559424, at *4 (E.D.N.Y. Apr. 9, 2019) ("The discretionary nature of the Commissioner's authority coupled with the references to employee actions in § 198 compels the conclusion that a private action under § 191 is consistent with the legislative scheme."); *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311, at *8 (N.D.N.Y. Mar. 24, 2022) ("[T]he Court is not convinced that the New York Court of Appeals would reach conclusions different than those expressed in *Vega*. … the Court finds that under *Vega*, Plaintiff presents a legally plausible claim in the First Cause of Action."); *Duverny v. Hercules Medical P.C.*, 2020 WL 1033048, at *5-6 (S.D.N.Y. Mar. 3, 2020) (following *Vega*, and denying defendant's motion for summary judgment as to plaintiff's Section 191 claim, noting that "[a] plaintiff's entitlement to statutory damages

pursuant to § 198(1-a) survives even if the employer pays the employee's base wages prior to the commencement of a civil action"); *Sorto v. Diversified Maintenance Systems, LLC*, 2020 WL 7693108, at *3 (E.D.N.Y. Dec. 28, 2020) ("Accordingly, the Defendant's objections are OVERRULED … permitting a private right of action is appropriate.") (internal quotation omitted); *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d 1, 3 (N.Y. App. Term. 2021) (agreeing with *Vega* "that a private right of action exists to enforce the rights established under section 198"); *Elhassa v. Hallmark Aviation Servs., L.P.*, 2022 WL 563264, at *2 (S.D.N.Y. Feb. 24, 2022) ("The New York Appellate Division First Department has held that the New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages even if the wages are no longer past due, *see Vega []*, and as Judge Kovner concluded just months ago, [s]ince *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law, *Caul*, 2021 WL 4407856, at *3."); *Beh v. Cmty. Care Companions Inc.*, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021) (citing *Sorto* and *Duverny*, and holding [f]or these reasons, the Court concludes that there is a private right of action for violations of NYLL § 191."); *Jones v. Nike Retail Svcs.*, 2022 WL 4007056, at *1 (E.D.N.Y. Aug. 30, 2022). ("The Court also rejects [Defendant's] argument that New York Labor Law § 191 does not create a private right of action."); *Glaser v. Bath & Body Works, LLC*, Case No. 2:20-cv-02530-WFK-AYS (E.D.N.Y. Sept. 28, 2022 Order Denying Motion to Dismiss).

All of the cases Defendant relies upon to argue that no private right of action exists for frequency of pay violations predate the First Department's ruling in *Vega*. [1]

---

[1] Notably, the Court in *Caul v. Petco* considered and rejected all of the cases Defendant cites here because those decisions were either decided before *Vega* or are inapplicable. *Caul*, 2021 WL 4407856, at *3-4 ("Defendants seek to relitigate *Vega*'s conclusion that an employer's late payment of full wages is an underpayment within the terms of Section 198(1-a). But defendants rely almost exclusively on pre-*Vega* cases," citing *Hussain, Hunter, Gardner,*

**B.    Courts Have Held That A Private Right Of Action Exists Long Before *Vega***

Defendant claims that "historically, courts held there was no private right of action for a violation of the frequency of payment provisions of NYLL Section 191 because there was no failure to pay wages or underpayment of wages." MTD at 6. That is just plain wrong. District courts within the Second Circuit have long held that a private right of action exists under NYLL § 191. For example, in *Wiggins v. Hain Pure Protein Corp.*, 829 F. Supp. 2d 231 (S.D.N.Y. 2011), Judge Cote recognized that "[p]ursuant to § 191, certain kinds of employees can bring a claim for an employer's failure to pay their wages on a certain schedule." *Id.* at 241. In another factually similar case where an employer allegedly failed to comply with NYLL § 191, the plaintiffs moved for summary judgment, and Judge Wood held:

> In this case, Defendants did not pay wages as often as the law requires, and did not pay wages as early as the law requires. Defendants paid wages every two weeks (rather than weekly) and paid these wages no earlier than two weeks after the end of the period in which those wages were earned. These facts are undisputed. Therefore, Plaintiffs [] are entitled to summary judgment on their claims that Defendants violated the timely payment provisions of NYLL § 191.

*Cuzco v. Orion Builders, Inc.*, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010).

In a decision issued shortly before *Vega*, Judge Feuerstein directly addressed the issue of whether a private cause of action existed. *Scott v. Whole Foods Market Grp., Inc.*, 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019). There, the court found that a private right of action existed based on several decisions from the Second Circuit and N.Y. Court of Appeals addressing claims under NYLL § 191 in which, "neither the Second Department nor the Court of Appeals suggested,

---

*Belizaire*, and *Kone*); *see also id.* ("Defendants also rely on inapposite cases that declined to imply private rights of action from other parts of the statute," citing to *Konkur*); *see also Rojas*, 2019 WL 4570161, at *2-3 ("This Court respectfully disagrees with the holdings in *Hussain* and *Hunter*."); *Scott*, 2020 WL 9814095, at *3 (rejecting defendant's reliance on *Hunter* because "[s]ubsequent to the issuance of []the *Hunter* decision … the First Department of the Appellate Division [in *Vega*] directly addressed the question in an identical situation as that raised in the instant case").

let alone held that the plaintiffs did not have a right to bring a claim under § 191 in the first instance." *Id.* at \*2.  Judge Feuerstein also noted that "[t]he Court of Appeals also touched upon actions brought pursuant to NYLL § 191 within an opinion responding to questions certified to it by the Second Circuit." *Id.* at \*3 (citing *Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 891 (2008)).  There, "the Court of Appeals implicitly assumed that an employee claiming a violation of § 191 has asserted a substantive violation and is entitled to utilize the remedies set forth in § 198." *Id.*

In *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012), the plaintiffs brought claims on behalf of manual workers, claiming violations of both the timely pay provisions and frequency of pay provisions under NYLL § 191.  *Id.* at 481.  In denying the defendant's motion to dismiss, and permitting the employees' claims under NYLL § 191 to proceed, Judge Swain observed that the New York Labor Law does not preclude employees from bringing a private action.  *Id.* at 482.

In another similar case where a defendant challenged whether the Plaintiff had asserted a valid cause of action under NYLL § 191, Judge Englemayer adopted the report and recommendation of Magistrate Judge Parker, holding as follows:

> Here, Plaintiff alleges that she was not paid in a timely manner and that [the employer] withheld her paychecks on various occasions. … Defendants' delay in paying Plaintiff her wages, either by failing to issue paychecks or by forward-dating her paychecks, violates the prompt payment requirements of the FLSA and the NYLL.

*Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 426 (S.D.N.Y. 2017).

Judge Spatt of the Eastern District also addressed whether a violation of NYLL § 191 gives right to a private right of action in *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390 (E.D.N.Y. 2015).  There, the plaintiff brought suit against her former employer under NYLL § 191 "based on

Rockmore's failure to timely pay her wages for "work performed during the Relevant Time Period." *Id.* at 403-04. Judge Spatt noted that "[a]n employer's failure to timely pay its employees for their work" entitles the employees to a remedy under NYLL § 198. *Id.* Many other courts have reached the same conclusion. *See*, *e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010) (holding NYLL § 191 "guarantees the timely payment of wages by employers"); *Pashaian v. Eccelston Properties, Ltd.*, 1993 WL 322835, at *2 (S.D.N.Y. Aug. 16, 1993) (the purpose of NYLL § 191 and its damages provision (NYLL § 198) is to ensure "timely payment" of wages); *Ortiz v. Arthur T. Mott Real Estate, L.L.C.*, Case No. 2:15-cv-03940, ECF No. 73 (Order re: Motion to Dismiss) (E.D.N.Y. Sept. 15, 2016) (denying defendant's motion to dismiss plaintiffs' NYLL § 191 claim and stating that NYLL § 191 "guarantees the timely payment of wages by employers"); *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) (allegation that bounced paychecks resulted in delayed payment of wages was sufficient to set forth a cause of action for "late payments" under New York Labor Law § 191); *Poplawski v. Metroplex on the Atl., L.L.C.*, 2012 WL 1107711, at *12 (E.D.N.Y. Apr. 2, 2012) (granting class certification of NYLL § 191 claims where it was alleged that there was a "failure to pay wages in a timely manner"); *Gonzales v. Tan Israel Pre-Sch.*, 2014 WL 1011070, at *12 (E.D.N.Y. Mar. 14, 2014) (plaintiff who performed janitorial work was a manual worker entitled to recover under § 191).

Against this backdrop, Defendant's suggestion that *Vega* is an anomaly holds no weight. The truth is that there was a split in authority on this issue, which *Vega* resolved. And *Vega* is not incorrect. Defendant is.

## II.  THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF NYLL § 191

*Vega*'s holding that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191," 175 A.D.3d at 1146, is well-supported by legislative history,

guidance from the New York Department of Labor, case law interpreting analogous provisions of the Fair Labor Standard Act, and common sense.

### A. Legislative Memoranda From 1966 And 1967 Show An Intent To Create A Private Right Of Action With Liquidated Damages From Late Payment Of Wages

NYLL § 198(1-a) expressly provides a private right of action for any "wage claim" in Article Six.  In *Vega*, the First Department noted the obvious: late payment of wages is a type of wage claim.  *Vega*, 175 A.D. 3d at 1145 ("contrary to defendant's argument that § 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages, the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer")).  The legislative comments to the Labor Law show that *Vega* was right:  claims for untimely payment under NYLL § 191 are the precise sort of "wage claims" intended to be covered by NYLL § 198 (1-a).

Defendant nonetheless argues "legislative history does not support implying a private right of action in these circumstances."  MTD at 16.  But that is wrong.  In 1966, the New York Legislature passed a bill repealing the previous iteration of Article Six and substituting new language which provides the basis for the current law in place today.  A memorandum accompanying the bill explained that "[t]he bill clarifies the application of the wage payment provisions for manual workers" by "indicat[ing] that weekly payment of wages applies to manual workers, except those employed by a non-profit organization."  Kopel Decl., Ex. 3, Memorandum of the Industrial Commissioner, June 3, 1966, Bill Jacket, L 1966, ch. 548 (pp. 4 of 12) (emphasis added).  Given that the Legislature explicitly referred to laws governing the frequency of payments to manual workers as "wage payment provisions," it is difficult to understand Defendant's argument that claims under these provisions are "non-wage" claims.  MTD at 8.

Indeed, in 1967, the Legislature enacted Section 198, allowing for a private cause of action

with a liquidated damages provision.  According to the memorandum accompanying the bill, its purpose was "[t]o assist the enforcement of the wage payment … laws by imposing greater sanctions on employers for violation of those laws."  Kopel Decl., Ex. 4, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 6 of 16).   Again, Defendant has argued that a frequency of pay violation is not a "wage claim."  But it seems clear that this statute meant to cover "wage payment laws" was intended to encompass the "wage payment provisions" from one year earlier.

Moreover, the 1967 memorandum makes clear that the purpose of the liquidated damages provision of the bill as to "**compensate the employee for the loss of the use of the money to which he was entitled**."  Kopel Decl., Ex. 4, pp. 5 of 16 (emphasis added).  That is the *precise* injury experienced by workers receiving their wages late.  And in a section titled "arguments in support of the bill," the memorandum explains that bill sought to remedy a scenario where employers "will have had the free use of their employees' money for some time and their employees will have been seriously inconvenienced.  The calculation of interest on the money due would be difficult as it would have accrued in small amounts week by week.  This bill follows the example of the Federal Fair Labor Standards Act in providing an easily-calculable formula for liquidated damages."  This shows a legislative intent for the liquidated damages provision to be used as a replacement for small amounts of weekly interest lost.

The 1967 Memorandum also makes clear that the Legislature considered and rejected Defendant's argument that the law would subject employers to "business-ending damages."  MTD at 3. It notes that "[s]ome persons may claim that the imposition of liquidated damages is unreasonable."  Kopel Decl., Ex. 3, pp. 5 of 16.  However, the liquidated damages provision was passed anyway in the hopes that it "would establish one more safeguard to assure employees or

proper payment of wages under the law and would thus be a deterrent against abuses and violations." Kopel Decl., Ex. 3, pp. 13 of 16.

Accordingly, the Legislature explained its intentions clearly at the time it passed the statutes that it was creating a private right of action for liquidated damages specifically to "compensate the employee for the loss of the use of the money to which he was entitled." Kopel Decl., Ex. 3, 5 of 16. Thus, there is every reason to believe that this was intended to apply to Section 191, which addresses late payments to employees.

### B. The New York Department Of Labor Has Explicitly Held That A Private Right Of Action Exists

Although Defendant argues "the consequence to employers for violating NYLL Section 191 is the possibility of civil penalties imposed by the Commissioner of Labor in an administrative proceeding," MTD at 7, the New York Department of Labor ("DOL") has explicitly held otherwise. Indeed, in an October 28, 2010 Opinion Letter, the DOL reiterated that NYLL § 191 is enforceable by a private right of action. *See* Kopel Decl., Ex. 5, RO-10-0003. In response to the employer's question as to whether employees may be required to "sign-off" on their timesheets, the Department of Labor responded that:

> Section 191 of the Labor Law requires the timely payment in full of an employee's agreed upon wages and sets forth the frequency of such payments for particular categories of employees. For example, manual workers must be paid weekly and not later than seven days after the end of the week in which their wages are earned …. While an employer can require an employee to sign off on their weekly timesheet, the employee's signature on a weekly timesheet, the employee's signature on a weekly timesheet neither relieves the employer of its obligations under []Section [191], *nor does it prevent an employee from filing a complaint with this Department or bringing an action for a violation of [NYLL § 191.]*"

*Id*. at pp. 4 (emphasis added). Thus, it is the view of New York's DOL that employees are empowered to bring private suits for violations of NYLL § 191.

10

The "[i]nterpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute." *Moran Towing & Transp. Co. v. N.Y. State Tax Com.*, 72 N.Y.2d 166, 173 (1988). Therefore, the DOL's opinion letter represents the agency's interpretation of NYLL § 191 and should be given judicial deference.

Defendant also argues that the organization of a complaint form on DOL's website is "persuasive evidence that a violation of the frequency of pay provision of NYLL Section 191 does not support a wage claim under NYLL Section 198." MTD at 7. That is a silly argument. The organization of a claim form is neither an opinion nor interpretation. The DOL has a means of expressing legal opinions: in opinion letters. And when it addressed this issue in an opinion letter, it stated that a private right of action exists.

## III.   THE LATE PAYMENT OF WAGES GIVES RISE TO A PRIVATE RIGHT OF ACTION UNDER THE FLSA, AND THAT APPLIES WITH EQUAL FORCE TO THE NYLL

Defendant spends considerable briefing arguing "this Court should ignore *Vega*" because the *Vega* court ignored "crucial differences between FLSA and NYLL liquidated damages." MTD at 8-11. That is wrong for many reasons.

### A.   The First Department Properly Relied On FLSA Case Law In *Vega*

In *Vega*, the First Department rejected the defendant's argument that it could "cure a violation and evade the statute by paying the wages that are due before the commencement of an action." *Vega*, 175 A.D.3d at 1145. In support of this the First Department explained:

> In interpreting the liquidated damages provisions of the Fair Labor Standards Act of 1938 (FLSA) (29 USC § 201 et seq.) the Supreme Court has held that, regardless of whether an employee has been paid wages owed before the commencement of the action, the statute provides a liquidated damages remedy for the "failure to pay the statutory minimum on time," in order to provide "compensation for the retention of a workman's pay which might result in damages too

11

> obscure and difficult of proof for estimate other than by liquidated damages" (*Brooklyn Savings Bank v O'Neil*, 324 US 697, 707 [1945]). Labor Law § 198 (1-a), although not identical to the FLSA liquidated damages provision (29 USC § 216 [b]), has "no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed" (Rana v Islam, 887 F3d 118, 123 [2d Cir 2018] [internal quotation marks omitted]). Accordingly, liquidated damages may be available under Labor Law § 198 (1-a) to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages.

*Id.* at 1146. *Vega*'s comparison of the NYLL to the FLSA is well-founded, as detailed below.

**B.    The FLSA and NYLL Have Identical Purposes and Similar Provisions, and Courts Apply FLSA Principles When Analyzing Liability Under the NYLL**

The FLSA and the NYLL serve identical purposes. The purpose of the FLSA is the "maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202.    The purpose of the NYLL is to "provide adequate maintenance for [New York workers] and their families." NYLL § 650.    Courts analyze claims arising under the NYLL and the FLSA similarly.    *Hamelin v. St. Luke's Healthcare*, 274 F.R.D. 385, 401 (N.D.N.Y. 2011) ("NYLL largely parallels the FLSA."); *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (New York Labor Law "is the state analogue to the federal FLSA."); *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013) ("The NYLL's definitions are nearly identical to the FLSA's."); *Herrera v. Tri-State Kitchen & Bath, Inc.*, 2015 WL 1529653, at *4 (E.D.N.Y. Mar. 12, 2015) (explaining the "NYLL is the state analogue to the federal FLSA").

The respective damages provisions for violations of the NYLL (NYLL § 198(1-a)) and the FLSA (29 U.S.C. § 216(b)) are also virtually identical.    The FLSA states that a prevailing employee is entitled to "unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."    29 U.S.C. § 216(b).    The NYLL states

that a prevailing employee is entitled "to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and … an additional amount as liquidated damages…"  NYLL § 198(1-a).  The Second Circuit has held that the damages provision of the FLSA and the NYLL "are identical in all material respects, serve the same functions, and redress the same injuries."  *Muhammed Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016); *see also Gonzalez v. Jane Roe Inc.*, 2015 WL 4662490, at *5 n.11 (E.D.N.Y. July 15, 2015) (recognizing that since the 2011 amendments to the NYLL, "courts have concluded that the distinction drawn between the purposes of the two statutes is no longer persuasive[.]").

### C. The Failure to Timely Pay Wages is a Violation of the FLSA for Which There is a Private Right of Action, Even in the Absence of an Express Statutory Provision

Although the FLSA contains no explicit timeline for the payment of wages, the Supreme Court has found that because failure to pay wages "on time" may be as detrimental to the "maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers" as non-payment, the late payment of wages is a violation of the FLSA.  *Brook. Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *see also Martin v. United States*, 117 Fed. Cl. 611, 617 (2014)).  Therefore, "[t]he general rule [under the FLSA] is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends."  29 C.F.R. § 778.106; *accord Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 445 (E.D.N.Y. 2014).

### D. Wages Become "Unpaid" If Not Paid When They are Due

Defendant argues that Plaintiff's claim is a "non-wage" claim, and "as a non-wage claim, a frequency of pay violation cannot constitute 'underpayment' of wages and thus there is no private right of action[.]"  MTD at 8.  Notably, however, this argument was rejected in the FLSA context

by the Ninth Circuit in *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993).  There, the Ninth Circuit held,
"[Defendants] urge us to distinguish between late payment and nonpayment, but offer us no
principled way to make such a distinction.  We cannot come up with one either… Any kind of
sliding scale [] would force employees, employers, and courts alike to guess when 'late payment'
becomes 'nonpayment.'"  *Id*. at 1539-1540.

Other courts have also recognized the problem with Defendant's argument.  For example,
in *Brooks v. Village of Ridgefield Park*, 978 F. Supp. 613, 617 (D.N.J. 1997), the plaintiff was a
K-9 officer in the Village of Ridgefield Police department who challenged the Village's schedule
of paying officers' overtime compensation monthly.  There was no dispute that the officers had
agreed to this payment schedule in their collective bargaining agreement, *see id*. at 617, yet the
plaintiff alleged that the delayed payment of overtime wages violated the FLSA.  The Court
granted summary judgment for the Plaintiff, noting:

> [if] an employer is not obligated to compensate an employee for
> overtime worked during a given week on the regular pay day for that
> week, this would lead to an ambiguous standard for determining
> when wages became 'unpaid' under the statute. Employers would
> then be permitted to withhold overtime compensation for some
> undefined period of time without incurring any legal liability and
> employees would be left with no recourse during this delay.
> Allowing such a delay in the payment of wages would run counter
> to the primary purpose of the FLSA to "protect certain groups . . .
> from substandard wages and excessive hours."

*Id*. at 618 (emphasis added, citing *Brook. Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).  On
appeal, the Third Circuit agreed that the failure to pay overtime "on the regular pay day for the
period in which such workweek ends" violates the FLSA.  *Brooks v. Village of Ridgefield Park*,
185 F.3d 130, 140 (3d Cir. 1999).

Similarly, in *Biggs*, the plaintiffs were a group of state employees who sued for a two-week
delay in the payment of wages caused by a budget impasse.  *Biggs*, 1 F.3d at 1539-40.  The Ninth

Circuit reasoned that wages become "unpaid" if they are not paid when due:

> If a payday has passed without payment, the employer cannot have met his obligation to "pay". . . Unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless. The statute must therefore contemplate a time at which § 206 is violated, or, put another way, when minimum wages become "unpaid." "Unpaid minimum wages" have to be "unpaid" as of some distinct point, otherwise courts could not compute either the amount of wages which are unpaid, or the additional "equal" amount of liquidated damages.

*Id.*  In short, a violation of the FLSA occurs when an employee does not receive overtime on his or her regular payday.  *Martin*, 117 Fed. Cl. at 620.  "To hold otherwise would create sufficient uncertainty as to when a violation occurs, and statutory enforcement would prove unworkable." *Id.*

### E.  The Reasoning Applied to Late Payment of Wages Under the FLSA is Applicable to the NYLL

While the right to payment of wages on the "regular payday" under the FLSA is implied, the New York Labor Law explicitly requires that manual workers be paid on a weekly basis, and "not later than seven calendar days after the end of the week in which the wages are earned." NYLL § 191(1)(a)(i).

As noted above, the failure to pay wages "on time" gives an employee the right to sue because a defendant's failure to pay wages contravenes the purpose of the FLSA—it is detrimental to the "maintenance of the minimum standard of living" of workers.  *Brook. Sav. Bank*, 324 U.S. at 707.  And just as with the FLSA, the failure to timely pay wages runs contrary to the specific purpose of NYLL § 191, which is "to protect the manual worker who [is] dependent upon the 'wages' he receive[s] weekly for [his] existence."  *Gonzalez v. Gan Israel Pre-School*, 2014 WL 1011070, at *9 (E.D.N.Y. March 14, 2014) (citing *People v. Bloom*, 7 Misc. 2d 1077, 1078 (1957)).

Defendant argues that the First Department's reliance on case law from the FLSA is

inappropriate because liquidated damages under the FLSA are "not penal" while under NYLL, they have been held to "constitute a penalty."  MTD at 9-10.  But this distinction is illusory.  "The New York State legislature has now twice amended its liquidated damages statute to conform as closely as possible to the FLSA's liquidated damages provision."  *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. Dec. 7, 2016).  These amendments suggest "an interest in aligning NYLL liquidated damages with the FLSA and can be read as a practical recognition of the dual punitive and compensatory effects of an award of liquidated damages under the statute." *Xochimitl v. Pita Grill of Hell's Kitchen*, *Inc.*, 2016 WL 4704917, at \*17 (S.D.N.Y. Sept. 8, 2016); *see also Gonzalez v. Jane Roe Inc.*, 2015 WL 4662490, at \*5 n.11 (E.D.N.Y. July 15, 2015) (recognizing that since the 2011 amendments to the NYLL, "courts have concluded that the distinction drawn between the purposes of the two statutes is no longer persuasive[.]").  Because courts no longer consider distinctions drawn between the purposes of the statutes to be persuasive, and because NYLL's liquidated damages provision serves "a dual punitive and compensatory" purpose, it is no different in its purpose from the FLSA provision.  And the amendments by New York's legislature to the liquidated damages provision are a clear indication (according to the Second Circuit) that courts *should* rely on case law from the FLSA in interpreting this provision of the NYLL.

Moreover, Defendant's argument cuts against its position.  Defendant urges the Court to hold that it cannot be held responsible for liquidated damages because it already paid Plaintiff's wages (albeit in an untimely fashion).  But this argument has undisputedly been rejected in the context of the FLSA, in which Defendant contends the damages are "compensatory."  And if the argument is invalid in the context of compensatory damages, *a fortiori* it is invalid in the context of punitive damages, which are intended to have a deterrent effect.  The liquidated damages cannot

have a deterrent effect if violators of the statute, who pay manual workers late, are exempt from them.  To the contrary, this would render the statute toothless and leave manual workers without recourse.  Employers could then continue paying them biweekly with complete impunity.

Finally, Defendant's briefing essentially ignores the Second Circuit's holding that the NYLL and FLSA provisions "have no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed."  *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  Thus, at least according to the Second Circuit, the two laws serve the same exact purpose.  Because of this, the Supreme Court's holding from *Brooklyn Savings Bank* that liquidated damages cannot be waived by acceptance of payment prior to commencement of the action, is equally applicable and persuasive in the context of the NYLL.

## IV.    NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF ACTION

Defendant further argues that finding an implied private right of action is inappropriate because the *Vega* court incorrectly considered the *Sheehy* factors and because "the Commission of Labor has the authority to enforce the frequency of pay provisions of NYLL Section 191."  MTD at 14-15.  But this argument was squarely rejected by the court in *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311 (N.D.N.Y. Mar. 24, 2022).  Specifically, the Court in *Mabe* held as follows:

> To the extent Defendant contends that the statute already provides an administrative mechanism to enforce Section 191 violations, the legislative history reflects the administrative nature of the Section 191 scheme, and that there is no private right of action in § 198 for a mere untimely payment of wages, *Vega* addressed those concerns. The *Vega* Court found that the purposes of Sections 191 and 198 are to protect employees who are "dependent upon their wages for sustenance" and deter labor law violations. *Vega*, 175 A.D.3d at 1146 (citation omitted). "And contrary to defendants' emphasis on administrative enforcement, Section 198 lets an individual sue even where the administrator declines," *Caul*, 2021 WL 4407856, at *3 (citing Vega, 175 A.D.3d at 1147), which the *Vega* Court found to be "consistent with the legislative scheme, as section 198 explicitly provides that individuals may bring suit against an employer for

17

> violations of the labor laws, even if the Commissioner chooses not
> to do so." *Vega*, 175 A.D.3d at 1147.

*Mabe*, 2022 WL 874311, at *6 (citing *Elhassa*, 2022 WL 563264, at *2 ("[T]he question in *Konkur* had to do with the implication of a private right of action [under Labor Law § 198–b, which prohibits wage kickbacks]. *Vega* rested on a different ground.'") (quoting *Vega*, 107 N.Y.S.3d at 288)).

The court in *Scott v. Whole Foods* reached a similar conclusion:

> There is nothing in the statutory scheme authorizing the Commissioner to take action that suggests that a private action is barred or would otherwise run counter to the legislative scheme. To the contrary, § 198 refers to civil actions brought by the commissioner, the employee, or both, and states that "[t]he remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other." NYLL § 198(2). The discretionary nature of the Commissioner's authority coupled with the references to employee actions in § 198 compels the conclusion that a private action under § 191 is consistent with the legislative scheme.

2019 WL 1559424, at *4.   Accordingly, Defendant's argument is without merit and should be rejected.  *See Sorto*, 2020 WL 8413553, at *2, *report and recommendation adopted*, 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) ("Moreover, as the courts in *Vega* and *Scott* recognized, this conclusion is consistent with an implied private of action under section 191, even if the statute may not fairly be read to expressly provide one."); *Caul*, 2021 WL 4407856, at *3 ("Defendants contend that the statute already provides an administrative mechanism to enforce Section 191 violations, the legislative history reflects the administrative nature of the Section 191 scheme, and the purpose of Section 191 is 'to ensure that employers make payroll payments at all.' But *Vega* addressed those general concerns, finding that the purposes of Sections 191 and 198 are to protect employees who are 'dependent upon their wages for sustenance' and deter labor law violations.

And contrary to defendants' emphasis on administrative enforcement, Section 198 lets an individual sue even where the administrator declines.") (internal citations omitted).

## V.   DEFENDANT'S DELAYED PAYMENT TO PLAINTIFF OF AMOUNTS OWED DOES NOT EXEMPT IT FROM LIQUIDATED DAMAGES

Defendant argues that NYLL § 198(1-a) exempts it from liability for liquidated damages because it eventually paid Plaintiff her salary prior to commencement of this action.  MTD at 17-19.  Based on this, Defendant argues that the Court cannot assess "liquidated damages equal to one hundred percent of the amount of the wages found to be due" because "there can be no wages 'found to be due.'"  *Id.* at 16.  Defendant is wrong.

This exact argument was analyzed and rejected by the First Department in *Vega*.  There, the court held that:

> We reject defendant's implicit attempt to read into section 198 (1-a) an ability to cure a violation and evade the statute by paying the wages that are due before the commencement of an action.  The employer may assert an affirmative defense of payment if there are no wages for the "employee to recover" (Labor Law § 198 [1-a]).  However, payment does not eviscerate the employee's statutory remedies.

175 A.D.3d at 1145.  The First Department based this on a comparison with the Fair Labor Standards Act's ("FLSA") liquidated damages provision.  The FLSA imposes liquidated damages for violations in an amount equal to "the amount of … unpaid minimum wages, or their unpaid overtime compensation, as the case may be."  29 U.S.C. § 216(b).  Based on this, the U.S. Supreme Court held that "regardless of whether an employee has been paid wages owed before the commencement of the action, the statute provides a liquidated damages remedy for the 'failure to pay the statutory minimum on time,' in order to provide 'compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'"  *Vega*, 175 A.D.3d at 1146 (quoting *Brooklyn Sav. Bank v. O'Neil*,

324 U.S. 697, 707 (1945)).  The First Department applied the same reasoning to its holding regarding the NYLL's liquidated damages provision.  *Id.*

The *Vega* decision also bases its reasoning on the NYLL's "legislative history" which "reflects that in addition to imposing 'stronger sanctions' to compel employer compliance, '[t]he imposition of liquidated damages will also compensate the employee for the loss of the use of the money to which he was entitled.'  The employee loses the use of money whether he or she is never paid, partially paid, or paid late."  *Vega*, 175 A.D.3d at 146 n.2 (quoting Governor's Approval Mem, Bill Jacket, L 1967, ch 310 at 1524; 1967 NY Legis. Ann. at 271).

The *Vega* decision is well-reasoned.  The Second Circuit has explained that NYLL § 198 (1-a), although not identical to the FLSA liquidated damages provision, has "no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  This lack of "meaningful differences" was intentional.  "The New York State legislature has now twice amended its liquidated damages statute to conform as closely as possible to the FLSA's liquidated damages provision."  *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. Dec. 7, 2016).  These amendments suggest "an interest in aligning NYLL liquidated damages with the FLSA and can be read as a practical recognition of the dual punitive and compensatory effects of an award of liquidated damages under the statute."  *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 2016 WL 4704917, at *17 (S.D.N.Y. Sept. 8, 2016).

Here, Defendant is arguing that the New York Legislature's use of the words "wages found to be due" in the NYLL statute suggests that payment of untimely compensation before commencement of an action provides employers with a safe harbor against the imposition of liquidated damages.  But this argument would theoretically apply with even greater force to the

language used by the FLSA which calculates liquidated damages as the "amount of unpaid []
wages." *Compare* NYLL § 198 (1-a) *with* 29 U.S.C. § 216(b).  If Defendant's argument were
correct, Congress's use of the word "unpaid" would indicate that the balance of unpaid wages
would need to remain outstanding at the commencement of a suit in order for courts to impose
liquidated damages for violations of the FLSA.  That is not the case.

Instead, the Supreme Court expressly rejected this argument in *Brooklyn Savings Bank*.
There, the court noted that (like the NYLL provisions), "[n]either the statutory language, the
legislative reports not the debates indicates that the question at issue was specifically considered
and resolved by Congress.  In the absence of evidence of specific Congressional intent, it becomes
necessary to resort to a broader consideration of the legislative policy behind this provision as
evidenced by its legislative history and the provisions in the structure of the Act."  324 U.S. at
705-06.

Here too, just as the First Department did in the *Vega* decision, New York's Court of
Appeals would be required to turn to the legislative policy behind NYLL § 198 (1-a).  And in
doing so, it is clear that the Court of Appeals would find that imposition of liquidated damages is
appropriate, even if the late payments were made before the action was filed.

Consider the implications of Defendant's argument.  Manual workers that are paid
biweekly instead of weekly would be required to refuse their biweekly payments in order to avoid
waiving their rights to collect liquidated damages under the statute.  This would contradict the
entire "object of the law which is to compel prompt payment of daily wages to the small wage
earner." *People v. Vetri*, 309 N.Y. 401, 407 (1955) (citing former NYLL § 196).  Employers
violating the statute would get off scot-free and manual workers would have no recourse
whatsoever.  "Such an interpretation would nullify the effectiveness of the Act." *Brooklyn Sav.*

*Bank*, 324 U.S. at 712.

Against this backdrop, there is no "persuasive evidence that the state's highest court would reach a different conclusion" than the "state's intermediate appellate court[]" did in the *Vega* decision. Defendant's argument must therefore be rejected.

## VI.    THE COURT IS NOT EMPOWERED TO GRANT DEFENDANT'S MOTION BASED ON A MERE DISAGREEMENT WITH *VEGA*

The entirety of Defendant's brief is devoted to trying to convince the Court that *Vega* was wrongly decided. But whether the Court agrees with *Vega* is simply not determinative. Nor is it determinative whether the Court thinks that the New York Court of Appeals would agree with *Vega*. Rather, the standard this Court must use for this motion is there is "persuasive evidence that the state's highest court would reach a different conclusion" from *Vega*. *V.S. v. Muhammad*, 595 F.3d at 432. That is an extremely high bar that Defendant's arguments do not even approach clearing. For instance, in *Quintanilla v. Kabo Pharms., Inc.*, Case No. 19-cv-06752, Hrg. Tr. (E.D.N.Y. June 30, 2020), Judge Chen denied a motion to dismiss a similar claim after previously holding that NYLL § 191 did not have a private right of action. Kopel Decl., Ex. 6, *Quintanilla v. Kabo Pharms., Inc.*, Case No. 19-cv-06752, Hrg. Tr. (E.D.N.Y. June 30, 2020). Even though Judge Chen found the reasoning of *Vega* to be "a little tortured," she correctly recognized that her Court was "bound to follow appellate court decisions unless … there is substantial evidence or reason to believe that the Court of Appeals would find otherwise." *Id.* at pp. 17. As every court to examine the *Vega* decision has recognized, the requisite "persuasive evidence" to part from its holding simply does not exist.

This is not even a close call. In *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 6805889 (E.D.N.Y. Dec. 21, 2021), the defendant sought certification of the court's denial of its motion to dismiss for interlocutory appeal. But Judge Kovner denied the motion, stating bluntly that:

> There is not substantial ground for a difference of opinion as to the availability of a private right of action for delayed waged payments under the NYLL. … Defendants' motion for certification fails to cite any relevant or persuasive conflicting opinions that raise genuine doubt as to the Court's obligation to follow *Vega*. And defendants have not identified persuasive evidence that the New York Court of Appeals would reach a different conclusion than *Vega*.

*Id.* at *1. The same is true here.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety.

Dated: October 25, 2022

Respectfully submitted,

By:   */s/ Yitzchak Kopel*
    Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
     aleslie@bursor.com

**CONNORS LLP**
Andrew M. Debbins
1000 Liberty Building
Buffalo, NY  14202
(716) 852-5533
amd@connorsllp.com

*Attorneys for Plaintiff*